Haywood Judge,
(dissentente.) If a suit be brought against an executor, and he pleads a judgment recovered against him sufficient to cover all the assets in his hands, the creditor may reply “per fraudem,,” and the proof lies on him who tenders the issue. So here the effect of the plea is, that the judgment was [not fairly ob¿ tained, and the proof lies on the heir or devisee. The judgment is to stand in both cases, and to be presumed fair until the contrary be proved; and by the act of 1784, ch. 11, sec. 2, is to be executed against the heir; and by section 5, a collateral issue as to the administration of the assets, is to be made up between the heir and the executor.
Was it the intent of this act, that the creditor, when he is compelled to proceed against the executor in the first instance, should lose his debt by a loss of evidence in the mean time; and is there no privity between the heir and the executor? If so, the creditor could not even show the evidence he had given against the executor, although he could prove by a living witness what a witness now dead, then swore. The law forces him into a tedious law suit against the executor for the benefit of the heir, and then punishes him for taking that course; then also if the act of limitations accrues during the pen-dency of the suit against the executor, the heir may plead it. If there is no connection between him and the executor, which will stop the running of the act of limita *18 tions against the creditor, from the time tbe suit is commenced against the executor, then, if there be a receipt or release, or other defence in the hands of the heir, and he will not produce it on the trial of the issue between the creditor and the executor, the plaintiff must waste hi3 time in pursuing the executor, until he can no longer, by explanatory evidence, avoid the defence which the heir may offer against him, and which, were it recently offered, he could explain by satisfactory evidence, now no longer in his power. If the act of limitations will stop from the time of the suit commenced against the executor, why is it so? Is it not because there is a privity between the heir and the executor, and because the law reposes a confidence, that the latter will act justly both towards the heir and the creditor? Suppose the executor will not plead the statute of limitations, knowing the debt to be just, and being entrusted by the law with a discretion in this respect, may he not bind as well the heir, as he may the legatees? (a) The testatorhas placed this confidence in him, and the law presumes he will not abuse it. Shall the heir be allowed to plead it as a new and independent de-fence? If the executor will not plead the statute of usury or of gaming, must the heir be allowed to plead it? If he can do all this, why say the proceedings shall be by scire facias, the object and prayer of which is, to have execution of the judgment against the executor? The plaintiff ought to be directed to proceed against the heir upon his original demand. Suppose the plaintiff should prove the demand, and the jury should be of opinion, that the quantum was less than that assessed by the former jury, what judgment shall be given upon the scire fa-cias? Suppose the quantum be more, in the opinion of the jury upon the sci. fa., shall the plaintiff have judgment and execution against the heir, for more than the scire facias demands?
*19 If the plaintiff fail against the executor, he is concluded; but if he recover he is to prove all over again in the proceeding against the heir. He is to meet new de-fences, after the loss of his testimony by which he could have successfully encountered them. He is exposed to the whole weight of the heir’s evidence "f|>on the act of limitations, gaming, usury, &c. after he has lost the evidence by which he could have proved his case to be out of the operation of these statutes, or other defences.
The law upon this subject will be best understood by recurring to legal history.
Formerly and before the act of parliament for subjecting lands in thecolonies to fi. fa., they were not to be sold by execution. When so made liable, some of the colonies considered them personal assets in the hands of the executor so far as regards the satisfaction of creditors, and execution issued without any notice to the heir, as in the West Indies, Pennsylvania and perhaps some of the New England colonies; and I believe in Georgia.— In North Carolina a different construction prevailed in different parts of the colony. But judicial decisions were made shortly before the revolution, that though a fi. fa. could issue against the lands of the heir, he should first have notice by scire facias, to which he might plead matter to show that the judgment ought not to be levied of the land, in analogy to the scire facias upon a judgment against his ancestor at the common law.
The judgment, then,against the executor affected lands in the hands of the heir, or otherwise could not be executed by a sale of the lands. The act of 1784, ch. 11, preserved the same idea, and directed with precision how the plaintiff should proceed. It still considered, according to former decisions which are stated in Baker vs. Ash, 1 Hay. Rep., that a judgment against the executor affected the lands; it considered also that execution upon that judgment may issue against the lands, but before it does so, requires notice to the heir by scire facias; upon which the legislature and the learned lawyers who introduced the bill into the assembly, well knew that a new judg *20 ment was not to be given, but an award of execution against the old one, upon the sci.fa. he might plead consistently with the judgment satisfaction, or no assets by descent, or payment to the value of the land, or per frau-dem.
The scire facialdoes not set forth the assumpsit, or cause of action stated in the declaration against the executor, and why? Because the heir is not to answer that. If the heir could require proof of it from the plaintillj it ought to be stated, othérwise he must deny that which is not stated, and call for proof of that which the plaintiff does not allege. The omission in practice to state in the scire facias, the original cause of action, is prbof undenia? ble that it is not to be made the subject of discussion otherwise than by the plea of per fraudem.
The plea of per fraudem is deemed a sufficient protection for the creditor against a judgment obtained previously against the executor by another creditor; and judgment by a third person against the vendee of a personal chattel is prima facie good against the vendor, when sued by the vendee, until removed by proof. Why should not also a judgment against the executor which really affects the land be good 'prima fade against the heir? To say otherwise is to go beyond the letter and spirit of the act of 1784, ch. 11; and to overturn the dicisions in North Carolina, which consider a judgment against the executor binding upon the lands. To say so, in fact places the heir, in all respects, upon the same ground as if there had been no proceeding against the executor, and renders the judgment against the latter of no effect; whereas, the law has always been taken in North Carolina, partly, as it was in Pennsylvania and the West Indies.
If the heir is not limited in pleading to the scire facias and may plead matters not stated in it, but supposed by him to be understood, and every thing which might have been pleaded by the executor, and was omitted to be done by him, and every thing which was pleaded by him and disproved, why then was there in the acts, a speciii-pafipn ot the pleas which might be pleaded by the heir? If *21 this be so, the plaintiff must inevitably have two law suits, instead of making his election at once against which to proceed; and the act of 1784 has heaped upon him dif-Acuities which the legislature did clearly not intend.— Whereas, if the heir can only plead perfraudem, and be allowed to prove such matters as the executor fraudulently refused to plead or prove, the creditor will have but one suit, in which he will have execution unless the heir can show unfairness in obtaining the judgment. It will be the interest of the creditor to inform the executor at pnce what to plead, and to prove the pleas as fully as he can to prevent collusion between him and the heir, and it will be the interest of the creditor to act fairly, that he pray not be affected by the plea of per fraudem; but otherwise it is, if the heir can plead de mm without restriction. The executor need only plead fully administered and leave it to the creditor and heir to contest all other matters.
Had this been the design of the legislature, would not the plaintiff have been permitted to include the heir .and executor in one suit, as in the statute against fraudulent devises, and to have recovered in one action what he was entitled to against the right person, rather than to have made proper the new and unheard of judgment for the plaintiff to recover damages assessed in a scire.facias. My opinion is that the judgment ought to be affirmed.
Judgment reversed, (a)

 The executor is not bound to plead the common act of limitations, but the special act of 1789, which was intended for the benefit of the estate — he, I presume is compelled to plead, or it wiJ) he a demstamit. Reporter.

 Vide Boyd vs. Armstrong’s heirs, 1 Yerger’s Rep. Peck vs. Wheaton’s heirs, Martin and Yerger’s Rep. Gilman vs. Tisdale, 1 Yerger’s Rep. Sutherland vs. M’Campbell, Peck’s Rep. appendix.